UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------x

IN THE MATTER OF:

JOHN S. MAZELLA,                    CASE NO. 10-23122(rdd)

          Debtor.                   CHAPTER 13

------------------------------x

------------------------------x

JOHN S. MAZELLA,

               Plaintiff,

Vs.                                 ADV. PROC. 10-08455(rdd)

FELDSTEIN,

               Defendant.

------------------------------x

               United States Bankruptcy Court

               300 Quarropas Street

               White Plains, New York 10601


               December 12, 2013

               11:37 AM


B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

 Acorn Transcriptions  www.acornfla.com   1-800-750-5747

2

1    Adversary Proceeding: 10-08455:

2

3    HEARING re:  Motion for Summary Judgment

4    HEARING re:  Cross Motion for Summary Judgment

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Transcribed by:  Acorn Transcriptions, Inc.

25

3

```
 1     A P P E A R A N C E S :

 2

 3     ORTIZ & ORTIZ, LLP

 4          Attorneys for Debtor

 5          127 Livingston Street

 6          Brooklyn, New York 11201

 7

 8     BY:  NORMA E. ORTIZ, ESQ.

 9

10     STEIN, RISO, MANTEL, MCDONOUGH, LLP

11          Attorneys for Defendant Feldstein

12          The Chrysler Building

13          405 Lexington Avenue

14          New York, New York 10174

15

16     BY:  EDWARD R. MINSON, ESQ.

17

18

19

20

21

22

23

24

25
```

JOHN S. MAZELLA                                    4

1                    P R O C E E D I N G S

2              THE COURT:  Mazella vs. Feldman -- Feldstein,

3    excuse me.

4              MS. ORTIZ:  Good afternoon or good morning,

5    Your Honor, Norma Ortiz for the Debtor.

6              MR. MINSON:  And Edward Minson from Stein Riso

7    Mantel McDonough for Mr. Feldstein.

8              THE COURT:  Okay.

9              MS. ORTIZ:  Your Honor, we made a motion, there

10   was a motion filed by Daniel O'Hara on behalf of the

11   Debtor.  And Mr. O'Hara asked me to argue it, Your Honor,

12   because I am very familiar with the facts of the case.

13             THE COURT:  Okay.

14             MS. ORTIZ:  And --

15             THE COURT:  It's a motion for summary judgment.

16             MS. ORTIZ:  It was a motion for -- and it was,

17   and it was brought on in part after the last hearing,

18   Your Honor, if you recall this case is based primarily on

19   a bankruptcy stipulation and order that was signed by

20   Judge Hardin.  There was a collection effort by one of

21   the creditors that was not paid pursuant to that

22   stipulation.  For a couple of years in the state court

23   there were orders entered in the state court and the

24   debtor has been trying to compel Mr. Feldstein to pay

25   this last remaining debt.

JOHN S. MAZELLA                                    5

1         We've been before you many times, and one of

2    the primary issues that was raised on many occasions was

3    the assertion that the debtor was barred by the statute

4    of limitations because of the timing of his complaint.

5         And we've had a number of discussions and

6    papers have been filed and we have asserted, Your Honor,

7    primarily two arguments; one is that the order is binding

8    and there is no statute of limitations that bars this

9    obligation.  The order is very clear.  Mr. Feldstein

10   binds himself to make these payments and to reimburse Mr.

11   -- Dr. Mazella.

12        And alternatively we argue that because the

13   payments went through 2005 that if the Court were to find

14   for some reason that the order was not binding, we are

15   not barred by the statute of limitations.

16        There was a motion to dismiss our second

17   amended complaint, and Your Honor indicated in part based

18   upon the Dreier case and the theory that we had discussed

19   that the payments have gone within the six-year period.

20   You denied that motion to dismiss and based upon that we

21   made the motion for summary judgment because it's the

22   debtor's position that there really is no question of

23   fact, material fact at this point.

24        If Your Honor were to find that we're just

25   seeking to enforce an order, a final order of Judge

JOHN S. MAZELLA                                    6

1    Hardin, the statute of limitations doesn't come into play

2    and we could finally move towards conclusion in this

3    case.

4              And that was inspired the motion --

5              THE COURT:  The summary judgment motion.

6              MS. ORTIZ:  The summary judgment motion.

7              THE COURT:  And there's a cross motion for

8    summary judgment also, right?

9              MR. MINSON:  Yes, that is correct, Your Honor.

10             THE COURT:  Okay.  And you contend that the --

11             MS. ORTIZ:  Well --

12             THE COURT:  -- that the reliance on the 2001

13   bankruptcy order and agreement is time barred and that,

14   to the extent of the complaint relies upon the October

15   2004 settlement agreement that Mr. Feldstein is not

16   primary -- is not primarily obligated under that

17   agreement.

18             MR. MINSON:  That is correct, Your Honor.

19             And I think that at the last time, I think, at

20   the hearing there was questions of fact and I don't think

21   it was so cut and dry --

22             THE COURT:  Well I denied the motion to dismiss

23   because there was sufficient evidence in the record to

24   survive a motion to dismiss that there had been payments

25   by Mr. Feldstein that brought the limitations period

JOHN S. MAZELLA                                    7

1    under the 2001 agreement up to the date of the petition.

2    And then the complaint was filed within two years after

3    the date of the petition.

4         MR. MINSON:  And Your Honor just to address

5    those issues, the 2001 stipulation, Mr. Feldstein was

6    required under that agreement to make payments to Mr.

7    Mazella in the amount of $12,500, you know, until I think

8    they reached a number of approximately $200,000.

9         Now he breached that agreement in 2003.  At the

10   last hearing you relied on payments that were made in

11   August of 2004 before --

12        THE COURT:  Up to then.

13        MR. MINSON:  Up to -- yeah, there were I think

14   two or three payments made in or about July and August of

15   2004; those months, so maybe July, August, September 2004

16   in the amounts of $7500.  However, those payments were

17   not -- and then a stipulation in 2004, in October 15th,

18   was entered into -- we, our contention is that the

19   payments that were made in 2004 prior to the 2004

20   stipulation were to the Cadle Company.  So they were not

21   made to Mazella.  The 2001 agreement required payments be

22   made directly to Mazella of 12,500.

23        In 2004 there were some agreements, there were

24   some discussions with the Cadle Company, with Feldstein

25   and Mazella where they started to try to discuss about a

JOHN S. MAZELLA                    8

1    new agreement.  Even that agreement was signed in October

2    of 2004 there were payments that Feldstein made of the

3    7500 which was the number required under the 2004

4    agreement, before that 2004 agreement was executed.

5         That, we believe, does not revive the 2001

6    agreement.  Those payments were made during the

7    negotiations of the 2004 agreement.  So those -- and they

8    were a different amount than the 2001 agreement, and they

9    were to a different party.  They were actually directly

10   to Mazella.

11        So last time I was a little bit caught off

12   guard when the discussion came because I was not aware of

13   those payments that were made in August and September,

14   because the reason why I wasn't aware of them because

15   they were not made directly to Mazella which is what they

16   were required to be made under the 2001 agreement.  And

17   that is the reason we believe that those payments don't

18   all of a sudden revive the 2001 agreement.

19        MR. ORTIZ:  Your Honor, if I may just say, the

20   indemnification agreement contained in the 2001 order

21   specifically provides that Mr. Feldstein will indemnify

22   and hold harmless the Mazellas.

23        If Your Honor were to find, and this is one of

24   the reasons why we made the motion, if Your Honor were to

25   find that this order is a final order of the Court, and

JOHN S. MAZELLA                                    9

1    there isn't a statute of limitations issue here, the

2    order is abundantly clear that this -- that Mr. Feldstein

3    is required to indemnify Mr. Mazella.

4              THE COURT:  Doesn't the order just approve the

5    settlement agreement?

6              MS. ORTIZ:  Yes.

7              MR. MINSON:  Yes, Your Honor.

8              MS. ORTIZ: Yes, and it's a final, and it's a --

9              THE COURT:  So wouldn't the settlement

10   agreement be the operative document?

11             MS. ORTIZ:  I'm sorry?  That's what I'm trying

12   to --

13             THE COURT:  Wouldn't the settlement agreement

14   be the operative document as opposed to the order?

15             MR. MINSON:  The settlement agreement is an

16   exhibit to --

17             MS. ORTIZ:  It's attached.

18             MR. MINSON:  -- the order.

19             MS. ORTIZ:  Yeah.  It incorporates that, yeah.

20             THE COURT:  Right.  And the order approves the

21   settlement agreement.

22             MS. ORTIZ:  Yes.

23             THE COURT:  So why would the, why wouldn't the

24   limitations period apply to the settlement agreement?

25             MS. ORTIZ:  Why wouldn't it apply, Your Honor?

JOHN S. MAZELLA                          10

1        THE COURT:  Right.

2        MS. ORTIZ:  Because our argument is that it's a

3   final order, it's a final order of the Court enforcing

4   the terms of this agreement.  And if you don't find that

5   it would require the debtor to restart again, and the

6   debtor already went through this cause of action.  That

7   is --

8        THE COURT:  No, but this --

9        MR. MINSON:  But Your Honor, it was a stip- --

10        THE COURT:  There's a -- I don't, first of all

11   that argument I don't think is made in the motion.  I

12   don't see that argument anywhere in the motion.

13        MS. ORTIZ:  I believe it is, Your Honor.  I

14   believe it is.

15        THE COURT:  Well is there any authority for the

16   proposition that -- look, the bankruptcy code requires

17   the bankruptcy court to approve any settlement agreement.

18        MS. ORTIZ:  Yes.

19        THE COURT:  I don't think that -- my

20   understanding is that that does not change the statute of

21   limitations running on a breach of the settlement

22   agreement.  You can't just say, oh, well because there's

23   an order it's, there's no such thing as a statute of

24   repose because the order is always there.  I guess the

25   parties could do that through an order.  I guess.  But I

JOHN S. MAZELLA                         11

1    don't see any --

2                MR. MINSON:  But, Your Honor --

3                THE COURT:  Let me finish.

4                MR. MINSON:  Sure, I'm sorry.

5                THE COURT:  I'm making your point.

6                MR. MINSON:  You're right, I'm sorry.

7                THE COURT:  What -- what's the authority to say

8    that an order approving the settlement agreement negates

9    any statute of limitations for breach of the settlement

10   agreement?

11               MS. ORTIZ:  It was our reading, Your Honor,

12   it's our argument that the order is final in --

13               THE COURT:  I know there's an argument, but --

14               MS. ORTIZ:  -- terms of the --

15               THE COURT:  -- there's still a limitations

16   period.  I mean what, is there any case that says that?

17               MS. ORTIZ:  Not completely on point, Your

18   Honor.

19               THE COURT:  Is there any case even close?

20               MS. ORTIZ:  We just cited that it was a final

21   order of the court.

22               THE COURT:  All right.  So I don't think that

23   argument's going to work.

24               MS. ORTIZ:  Okay.

25               THE COURT:  I do, I do think though -- I mean

                          JOHN S. MAZELLA                    12

1     my inclination is that the Riso affirmation --

2              MS. ORTIZ:  Yes, Your Honor.

3              THE COURT:  -- from September 13 or September

4     14?

5              MS. ORTIZ:  Yes, Your Honor.

6              THE COURT:  Let me just check.

7         (Pause)

8              THE COURT:  September 13, 2004.

9              MS. ORTIZ:  Yes.

10             THE COURT:  Is cited, and it's, you know,

11    documented on the record of course, but if it's cited in

12    the plaintiff's rule 7056 statement as the basis for

13    tolling the limitation or reviving the limitations

14    period.

15             MS. ORTIZ:  Yes.  Yes, Your Honor.

16             THE COURT:  In paragraph 16 of that statement.

17    And the response to paragraph 16 admits that the Riso

18    affirmation acknowledged the defendant performed under

19    the 2001 bankruptcy stipulation and it paid over a

20    million one under that agreement and that defendant had

21    tendered a series of post-dated monthly checks to --

22    should be Cadle, cable company, it says in this, but

23    should be Cadle -- each in the amount of $7500 covering

24    the period February 15, 2014 to May 15, 2015.

25             MS. ORTIZ:  Yes.

JOHN S. MAZELLA                                    13

1        THE COURT:  And refers the Court to the

2    affirmation for the facts alleged therein.

3        So I've read the affirmation again, I mean I

4    read it obviously for the June 17th hearing.  So let me

5    turn to that.  It's an exhibit to the motion -- the

6    debtor's motion.

7        (Pause)

8        THE COURT:  And it's the affirmation of Gerard

9    A. Riso -- is he the named partner in your firm?

10       MR. MINSON:  Yes, he is

11       THE COURT:  Okay, all right.  So it shouldn't

12   be a big surprise what he says in there.

13       Paragraph 7 --

14       MS. ORTIZ:  Yes.

15       THE COURT:  By the way this is dated September

16   13, 2004 before the settlement agreement.

17       MR. MINSON:  But, Your Honor, it was filed

18   October 24, 2004.

19       THE COURT:  It's dated September 13th and it's

20   in response or in support of Mr. Feldstein's opposition

21   to being joined as a -- to an order to show cause as a

22   party to this collection action by Cadle.

23       And paragraph 7 it says, Mr. -- and it's trying

24   to, I guess, justify that really you don't need to

25   involve us in here because we're trying to do the right

JOHN S. MAZELLA                        14

1    thing.  "Mr. Feldstein has in fact reached an interim

2    arrangement with plaintiff."  Which this is the -- I

3    think a pretty key clause, "which he entered into

4    pursuant to his obligations to Dr. Mazella pursuant to

5    the agreement."  The agreement being the 2001 settlement

6    agreement.

7         And then as acknowledged in the 7056 response

8    in front of me by Mr. Feldstein he says in paragraph 8,

9    "Mr. Feldstein has continued to make good on the post-

10   dated checks provided to plaintiff on February 11th."

11        And then if you go to page 5, paragraph 11,

12   "Mr. Feldstein has diligently attempted to meet his

13   obligations."  And his obligations, as he's referring to

14   them, I believe, and this is clarified I believe in the

15   next two sentences, are his obligations under the 2001

16   agreement.  He says, right after that sentence, "Mr.

17   Feldstein has diligently attempted to meet his

18   obligations."  He says, "He has paid over 1.1 million

19   under the agreement."

20        MS. ORTIZ:  Yes.

21        THE COURT:  The agreement being the Mazella

22   agreement, the settlement agreement from 2001.  "He has

23   not ignored plaintiff, paying significant sums which he

24   continues to pay."  He represented this in September

25   13th, 2004 in his declaration on behalf of Feldstein.

JOHN S. MAZELLA                           15

1          MS. ORTIZ:  And checks were --

2          THE COURT:  And then he says, "Thus if Dr.

3     Mazella believes he's entitled to additional payments

4     from Mr. Feldstein he has remedies under the confession

5     of judgment."

6               To me he's reaffirming the debt.  He says I owe

7     it on behalf of Feldstein.  And of course that's in

8     September, that's before the 2004 October settlement and

9     it's clearly within six years of the commencement of this

10    case which was in June of 2010, and the complaint was

11    filed within the 180 day period provided in the

12    bankruptcy code for tolling.

13         MS. ORTIZ:  our Honor, I've also argued that --

14         THE COURT:  So I don't see, I mean this is --

15    it's clearly the memorandum doesn't deal with this at

16    all.  The memorandum, kind of amazing to me given that I

17    went through this in detail in June, simply says that the

18    payments were made under the October agreement.  That's

19    completely contradicted by Mr. Riso's declaration from

20    September, and by the 7056 response which makes it clear

21    that payments were being made in July and August and

22    refers me to the Riso affidavit which says that, you

23    know, we're living up to our agreement.  The agreement

24    with Mazella.

25              And that was perfectly appropriate for him to

JOHN S. MAZELLA                          16

1    say it then because that agreement is an indemnification

2    agreement and, you know, he could take the view that, in

3    litigation, that yeah it's an indemnification agreement

4    and we don't have to do anything more than that.  Bring

5    us in when there's a default.  We're on board here.

6    We're dealing with it, and we continue to deal with it.

7    So don't include us in this state court litigation

8    between the Cadle company and Mazella.

9             I mean is there any response to that?

10            MS. MINSON:  Just that, the response was at

11   that point there was a breach and at that point they had

12   been making, they had been in discussions with -- the

13   payments that he refers to, the $7500 payments that Mr.

14   Riso refers to were going directly to the Cadle Company.

15            THE COURT:  To honor, to comply with his

16   obligations under the agreement.  That's what he says.

17            MR. MINSON:  No, our position --

18            MS. ORTIZ:  He wouldn't --

19            MR. MINSON:  -- is that he was doing it under

20   the guise of the new agreement that they were

21   negotiating.

22            THE COURT:  There wasn't one.  The date is

23   different.

24            MR. MINSON:  There wasn't one at that time.

25            THE COURT:  No.  There wasn't.  There's no way.

JOHN S. MAZELLA                          17

1    There wasn't.

2              MR. MINSON:  I do see the --

3              THE COURT:  I mean it just stares you right in

4    the face.  The other one is from October.  This is

5    September.  And he's filing it, he's obviously filing

6    this affirmation because at that point they were not in

7    agreement.  There is no reason to file it.  He could have

8    said we're in the middle of settlement discussions,

9    Judge, put this off.  That's not what he says.  He's

10   basically arguing the merits of this order to show cause.

11             MR. MINSON:  I do see the Court's position,

12   Your Honor.

13             THE COURT:  So I just -- and again the

14   memorandum doesn't, the memorandum in support of the

15   cross motion and in opposition to Mazella's summary

16   judgment motion doesn't even address the statute of

17   limitations revival case law that I referred to back in

18   June, the leading case being Roth v. Michelson 55 N.Y. 2d

19   278, 449 N.Y.S. 2d 159, 161 (1982) which -- see also, In

20   Re: Dreier, LLP, 421 B.R. 60 at 63 (Bankr. S.D.N.Y 20 09)

21   where Judge Bernstein quotes the Michelson case, where he

22   says, "There's a longstanding common law rule that a part

23   payment" -- part payment, $7500 a month -- "of a debt

24   otherwise outlawed by the statute of limitations is made

25   under circumstances from which a promise to honor the

JOHN S. MAZELLA                    18

1    obligation may be inferred, it will be effected to make

2    the time limited for bringing an action, start anew from

3    the time of such payment."

4              And, you know, I would think that one could

5    infer that literally from the 7500, but I think that the

6    Riso affidavit makes it crystal clear when he says again

7    he's in fact reached a arrangement which he entered into

8    pursuant to his obligations to Dr. Mazella pursuant to

9    the agreement.  And, you know, where he says later the

10   language I quoted, it just seems to me that he's saying

11   we're on board.  He didn't have to say that, but that in

12   September of 2004 does -- you know, I think that's what

13   it does.

14             So to me the limitations period hasn't run on

15   the first one, the 2001 settlement.  The bankruptcy

16   stipulation from June 28, 2001 and the counter

17   designation the -- Feldstein's 7056 statement

18   acknowledges that that agreement is an indemnification

19   agreement which it would have to, because that's what it

20   says in the agreement.

21             So I think the indemnification claim is --

22   that's the only defense to that obligation under that

23   agreement and there's no defense.  So I'm going to grant

24   summary judgment on that one.  There's no real defense to

25   it on the statute of limitations ground.

JOHN S. MAZELLA                    19

1          I don't think, well I agree with you that the

2    ruling by the state court judge that Mr. Feldstein the

3    primary obligor under that agreement, that 2001

4    agreement, I don't think that is binding on Mr.

5    Feldstein.  I'm not sure it matters based on the fact

6    that there's no statute of limitations defense to it

7    because you're looking to enforce it as an indemnity.

8          MS. ORTIZ:  Yes.

9          THE COURT:  I don't think it's argued that the

10   later on supercedes that agreement.  In fact it's argued

11   to the contrary that it's a separate agreement because

12   it's with Cadle as well as Mazella being a part of the

13   action.

14         But I guess we should turn to whether the, I

15   mean there are three causes of action in the complaint.

16   I've just given you -- I've granted the summary judgment

17   motion on --

18         MS. ORTIZ:  Well one of them was breach of

19   contract, Your Honor, which --

20         THE COURT:  Right.

21         MS. ORTIZ:  -- we would withdraw at this point.

22   It doesn't make --

23         THE COURT:  Well I've given you, well --

24         MS. ORTIZ:  I shouldn't say that.  I shouldn't

25   have said that --

JOHN S. MAZELLA                    20

1           THE COURT:  No, there's --

2           MS. ORTIZ:  No, I'm sorry.

3           THE COURT:  No there's no reason to withdraw

4    that.

5           MS. ORTIZ:  I'm sorry, I'm sorry about that.

6           MR. MINSON:  Okay.

7           THE COURT:  No, I don't think you meant to say

8    that.  That was just a brain freeze.

9           MS. ORTIZ:  I said -- I should have the unjust

10   enrichment.

11          THE COURT:  Unjust enrichment would not apply.

12          MS. ORTIZ:  Unjust enrichment, Your Honor.  And

13   I think the first one was just declaratory judgment.

14          THE COURT:  Right.  That is the primary

15   obligor.  I don't know if  you're pursuing that, I --

16          MS. ORTIZ:  I don't think we have to.

17          THE COURT:  Clearly the second one and the

18   third one would be, you know, you'd get summary judgment

19   on because the only defense --

20          MR. MINSON:  The second and fourth?

21          THE COURT:  No, the second and third.  There's

22   the indemnification is the second --

23          MS. ORTIZ:  Well third is unjust --

24          THE COURT:  Oh, I'm sorry, the second and

25   fourth.  You're right.

JOHN S. MAZELLA                    21

1           MR. MINSON:  Second and fourth.

2           MS. ORTIZ:  Second and fourth.

3           THE COURT:  Second and fourth, I'm sorry,

4     you're right, you're right.

5           There would be no reason to grant the third one

6     anyway because the contracts --

7           MS. ORTIZ:  Yes.

8           THE COURT:  -- that cover this --

9           MS. ORTIZ:  Yes, Your Honor.

10          THE COURT:  But in any event you're withdrawing

11    that one.

12          But on the second one, indemnification the only

13    defense to that was statute of limitations on the 2001

14    stipulation and I've ruled on that.

15          And on the third, again, the only defense to

16    that is the statute of limitations.

17          MR. MINSON:  Statute of limitations.

18          THE COURT:  So I've ruled on that.

19          It does appear to me that the 2004 settlement

20    does make Mr. Feldstein the primary obligor.  The only

21    right under that settlement, this is again the October

22    14, 2004 settlement, the only right that Cadle has to go

23    against Dr. Mazella under that settlement is if Mr.

24    Feldstein is not making timely payments.

25          MS. ORTIZ:  Yes.

JOHN S. MAZELLA                    22

1         THE COURT:  And that's set forth in a couple of

2    places; paragraph 5 --

3         MS. ORTIZ:  Yes.

4         THE COURT:  -- sets forth the default

5    mechanism, and then it ties into paragraph 8 which is

6    really the key paragraph which says, "Cadle agrees that

7    it shall not act in any way to enforce the judgment it

8    holds against Mazella during the time that Feldstein is

9    making timely payments as set forth above.  Cadle shall

10   be entitled to enforce it's judgment against Mazella in

11   the event that Feldstein defaults and fails to cure the

12   same."

13        They've done that.  I mean Feldstein did

14   default, but that -- those two paragraphs combined make

15   Feldstein the primary obligor.  It's not -- this isn't an

16   indemnification.

17        MS. ORTIZ:  I'm sorry, I didn't hear you.

18        THE COURT:  This agreement, the October 2004

19   agreement, is not an indemnity agreement.

20        MS. ORTIZ:  Yes.

21        THE COURT:  But he's the primary obligor under

22   that agreement.

23        MS. ORTIZ:  Yes.

24        THE COURT:  So I'm -- unless I'm missing

25   something that's the plain language of the parties, that

JOHN S. MAZELLA                          23

1    I would -- I would grant summary judgment on that point

2    with regard to Count I.  I don't think I'm prepared to do

3    it as to the 2001 stipulation as to Count I.  I know that

4    that was the logic in -- make sure I have her name right

5    -- Justice Shafer's --

6              MS. ORTIZ:  Yes.

7              THE COURT:  -- order, but it was really kind

8    of, it was really in the context of -- well first of all

9    Feldstein was not a party to, at that point to the

10   litigation.

11             MS. ORTIZ:  Yes.

12             THE COURT:  So it's not binding as a matter of

13   collateral estoppel or res judicata.

14             MS. ORTIZ:  Right.

15             THE COURT:  And it was in essence to get

16   Feldstein, to delay the litigation until the Feldstein

17   issue could be decided as far as joinder.  And I think

18   that, frankly my reading of the settlement agreement is

19   ambiguous as to whether they're the primary obligor under

20   that settlement agreement.  It's clearly an

21   indemnification agreement?

22             MS. ORTIZ:  Yes.

23             THE COURT:  But I, I would -- I think it's

24   irrelevant frankly because you're looking simply to

25   enforce your indemnification claim --

JOHN S. MAZELLA                    24

1          MS. ORTIZ:  Yes.

2          THE COURT:  -- against him.  But I'm not

3    prepared on a summary judgment basis to find that he's

4    the primary obligor under it.  I'd like to get more of a

5    context of how was, what was intended.

6          MS. ORTIZ:  I understand, Your Honor.

7          THE COURT:  Okay.

8          MR. MINSON:  So just to clarify, the summary

9    judgment on indemnification and breach of contract --

10         THE COURT:  Right.

11         MR. MINSON:  -- as to --

12         THE COURT:  As to both agreements.

13         MR. MINSON:  -- 2001 and 2004 --

14         THE COURT:  Well 2004 there's no issue.

15         MR. MINSON:  Yeah.  And as to -- yes, you're

16   correct.

17         THE COURT:  Summary judgment in your favor as

18   to Count 3 -- or actually it's withdrawn.

19         MR. MINSON:  And the summary judgment as to the

20   2004 agreement as --

21         THE COURT:  That's to Count 1.

22         MR. MINSON:  -- to Count 1 being the primary

23   obligor.

24         THE COURT:  Right.  Right.

25         MS. ORTIZ:  And 3 is withdrawn.

JOHN S. MAZELLA                    25

1    THE COURT:  We went through this fairly quickly

2    but I think it's a fairly simple analysis, and I don't

3    have to give you the standards on summary judgment.  This

4    clearly fits within the summary judgment rubric.  There

5    are no disputed facts on this issue.  I've read the

6    sections of the 756 statements that refer me back to Mr.

7    Roth's declaration.  There's no facts saying that that

8    declaration was somehow wrong or incorrect or whatever so

9    it speaks for itself.

10    To me it is clear from that declaration that

11    under the -- consistent with the Roth v. Michelson case

12    as of September 2004 Mr. Feldstein through his counsel,

13    who was filing the declaration on his behalf, was making

14    it clear that he continued to promise to honor that

15    obligation notwithstanding the earlier default in 2003.

16    The obligation being the 2001 bankruptcy stipulation.

17    MS. ORTIZ:  And may I just note one thing for

18    the record, Your Honor.  It is that we also did a cert

19    that says that payments were tendered through '05 and

20    went into '05.

21    THE COURT:  Well, yeah.

22    MS. ORTIZ:  It wasn't just as '04, it went into

23    '05 and payments were made through '05.

24    THE COURT:  Right.

25    MS. ORTIZ:  So if there was any question about

JOHN S. MAZELLA                    26

1    what month it --

2               THE COURT:  No, they were --

3               MS. ORTIZ:  -- was in 2004, it did go into

4    2005.

5               THE COURT:  Right, but the post-dated checks

6    went through --

7               MS. ORTIZ:  Yes, through 2004.

8               THE COURT:  Right.  But September 2004 the

9    case, the bankruptcy case was filed --

10              MS. ORTIZ:  I think in June.

11              THE COURT:  June 2010.

12              MS. ORTIZ:  Yes.

13              THE COURT:  So even from September, and that

14   would be sufficient.  It was, it was filed June 1, 2010.

15   And 108(a)2 of the Bankruptcy Code provides for a two-

16   year extension --

17              MS. ORTIZ:  Yes.

18              THE COURT:  -- of the limitations period and

19   this adversary proceeding was filed well within that; it

20   was filed December 31, 2010.

21              MS. ORTIZ:  2010.

22              THE COURT:  So it's seven months later.  So the

23   adversary is timely.

24              I should have started this whole process, I

25   apologize for going back to it now, by noting that I had

JOHN S. MAZELLA                          27

1    my Chapter 13 calendar yesterday.

2                MS. ORTIZ:  Yes, Your Honor.

3                THE COURT:  The Chapter 13 Trustee had a motion

4    on --

5                MS. ORTIZ:  Yes, Your Honor.

6                THE COURT:  -- to dismiss this case for failure

7    to perform plan payments.

8                MS. ORTIZ:  Yes, Your Honor.

9                THE COURT:  And I granted that motion although

10   I made it clear that I might reconsider it if there was

11   anything under the plan that had been performed by the

12   debtor and the debtor was going to catch up on the

13   payments.

14               But separate and apart from that, and I want to

15   get this out on the record, I do not believe under the

16   law in this circuit that my dismissal of the case, and

17   the order hasn't been entered yet because it was just

18   yesterday afternoon that I had the hearing, but the

19   dismissal of the case does not automatically result in

20   the requirement that I dismiss this adversary proceeding.

21               The courts have long held, including in the

22   Second Circuit, that the court has discretion under

23   Section 349 which specifically authorizes the bankruptcy

24   court to alter the normal effect of dismissal, which is

25   that it gets rid of everything in the bankruptcy case,

JOHN S. MAZELLA                    28

1    and it's introduction says "unless the court for cause

2    orders otherwise."  But the court has discretion to keep

3    jurisdiction over a pending adversary proceeding.

4              And in going through that discretionary

5    analysis the court is supposed to consider judicial

6    economy, fairness and convenience to the parties and the

7    degree of difficulty of the state law issues involved.

8              See generally In Re Porges, P-o-r-g-e-s, 44 F.

9    3d 159, 162 through 630 (2d Cir. 1995), as well as for

10   the factors, see in addition to that case, In re

11   Carraher, 971 F. 2d 327, 328 (9th Cir. 1992), In re

12   Morris, 950 F. 2d 1531, 1534 (11th Cir. 1992) -- I'm

13   sorry, 1535.  And In re Roma Group, Inc., 137 B.R. 150,

14   151 (Bankr. S.D.N.Y. 1992), and In re Stardust Inn, Inc.,

15   70 B.R. 888, 890-891 (Bankr. E.D. PA 1987).

16             Here obviously I've, as you noted at the start

17   of this hearing Ms. Ortiz I've been presiding over this

18   litigation, had rulings on the motion to dismiss the

19   initial complaint, leave to amend that complaint, on

20   motion to dismiss the second amended complaint, this

21   summary judgment hearing had been scheduled for months.

22   I think there'd be a, you know, it's hard to find a

23   better case for continuing jurisdiction on grounds of

24   judicial economy, fairness and convenience to the parties

25   et cetera.

JOHN S. MAZELLA                    29

1          As far as the state law issues it's really a

2    summary judgment, I mean it's pretty simple.  So given

3    that fact --

4          MS. ORTIZ:  Your Honor, may I just ask you for

5    clarification?

6          THE COURT:  -- I will, I had concluded even

7    yesterday, but also today that I would keep jurisdiction

8    over this proceeding at least through the summary

9    judgment.  If I denied summary judgment I would consider

10   sending it back to state court, but I don't see a basis

11   for that here.

12         MS. ORTIZ:  May I just ask you for some

13   clarification, Your Honor?

14         THE COURT:  Sure.

15         MS. ORTIZ:  Mr. Malera (ph) informed me that I

16   should contact Ms. Cava (ph) that you had dismissed the

17   case but that --

18         THE COURT:  Right.

19         MS. ORTIZ:  -- I should try to speak to her

20   about --

21         THE COURT:  Only if there was something besides

22   this litigation that you wanted to deal with in the case.

23   If there was a Chapter 13 plan issue that I was missing

24   -- the way he phrased it at the hearing was, Ms. Ortiz

25   asked that it not be dismissed because we have summary

JOHN S. MAZELLA                          30

1    judgment on tomorrow.  And, you know, Porges deals with

2    that.

3              MS. ORTIZ:  I understand now.

4              THE COURT:  And, so, if that was the only

5    factor I was going to dismiss the case because he hadn't

6    made his payments, and I would deal with this litigation

7    as I, you know, as has transpired today.  Or if I denied

8    summary judgment, I might have sent it back.

9              But if there was something else, for example, I

10   don't recall -- for example if you had gotten a Pond

11   motion and stripped off a second lien which only works in

12   a bankruptcy -- if there were any things like that where

13   a Chapter 13 plan was important, I'd give you a chance to

14   cure the default and so would the Trustee, and I would --

15   she would pull, frankly, she would pull --

16             MS. ORTIZ:  Okay.

17             THE COURT:  -- that or adjourn her motion to

18   dismiss.

19             MS. ORTIZ:  The only reason why it's important,

20   Your Honor, is that the Cadle Company is extremely

21   aggressive in its collection against the debtor.

22             THE COURT:  Well then he needs to make his plan

23   payments.  Then he should make his plan --

24             MS. ORTIZ:  And he will.

25             THE COURT:  -- payments by Monday.  Because

JOHN S. MAZELLA                    31

1    otherwise -- or today even or tomorrow because otherwise

2    she's going to submit the order.  If he makes the plan

3    payments she's not going to submit it.

4              MS. ORTIZ:  Okay.  That was my question.

5              THE COURT:  Okay.

6              MS. ORTIZ:  That was my question.  All right.

7              THE COURT:  All right.

8              MS. ORTIZ:  Thank you very much, Your Honor.

9              THE COURT:  But that, the only reason he gave

10   was that we had summary judgment, but I've given you the

11   case law on that so I didn't need to keep the Chapter 13

12   in place for that --

13             MS. ORTIZ:  I see, Your Honor.

14             THE COURT:  -- for that purpose.

15             MS. ORTIZ:  All right.  Well thank you very

16   much, Your Honor.  I will straighten that out.

17             THE COURT:  Okay.  So I'm going to look for an

18   order from counsel for the debtor/plaintiff, it should

19   put in it that the unjust enrichment cause of action is

20   withdrawn.

21             MS. ORTIZ:  Yes.

22             THE COURT:  And grants summary judgment on the

23   other three, and denies summary judgment on the other

24   three -- the cross motion for summary judgment on the

25   other three, except and respective -- unless, maybe

JOHN S. MAZELLA                        32

1     you're going to withdraw that too, the request for

2     declaratory judgment that the 2001 stipulation is one of

3     primary obligation.

4             MS. ORTIZ:  Thank you very much, Your Honor.

5             MR. MINSON:  Okay.  Thank you very much, Your

6     Honor.

7             THE COURT:  I mean I'm assuming that you're

8     not, I'm assuming this is over at this point.  I mean

9     there are appeal rights but --

10            MS. ORTIZ:  It's not over for John Mazella

11    until he pays off the --

12            THE COURT:  No, no, I'm not talking about this

13    adversary proceeding.

14            MS. ORTIZ:  I hope so, Your Honor.

15            THE COURT:  No, no, you're not -- I'm not being

16    clear.  I didn't grant you summary judgment on a little

17    portion of your motion.

18            MS. ORTIZ:  I understand.

19            THE COURT:  I don't know if you're going to be

20    asking for a trial on that or not or whether you're

21    satisfied with the rulings in the way that declaratory

22    judgment request was sort of an alternative request as to

23    the 2001.

24            MS. ORTIZ:  No, I'm satisfied with the ruling.

25            THE COURT:  All right.  Fine.  So then I think

JOHN S. MAZELLA                                    33

1    you should say the adversaries are closed.

2              MS. ORTIZ:  Okay.

3              THE COURT:  I mean you should provide for the

4    closing of the adversary.

5              MS. ORTIZ:  All right.  Thank you very much.

6              THE COURT:  Okay.

7              MR. MINSON:  Thank you, Your Honor.

8              THE COURT:  Thank you.

9              ***(Whereupon the matter concluded)***

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

34

1

2                                    I N D E X

3

4                                                              PAGE

5       Motion for Summary Judgment (Adversary

6       Proceeding 10-08455) –

7         Count I – statute of limitations – granted        18

8         Count II – indemnification – granted              21

9         Count III – unjust enrichment – withdrawn         21

10        Count IV – breach of contract – granted           21

11

12      Cross Motion for Summary Judgment (Adversary

13      Proceeding 10-08455) – denied except for

14      declaratory judgment                                32

15

16

17

18

19

20

21

22

23

24

25

35

CERTIFICATION


I, Nancy B. Gardelli, certify that the foregoing transcript is correct, to the best of my ability, from the official electronic sound recording of the proceedings in the above-entitled matter.



_____

Nancy B. Gardelli, Notary Public
Commission expires: 6/28/15
Acorn Transcriptions, Inc.
**www.acornfla.com**


Date:  February 7, 2014